# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA

## DECEMBER TERM, 1861.

DAVID B. DODGE, Plaintiff in Error *vs.* ELLEN R. HOLLINS-
HEAD, Defendant in Error.

The certificate of a notary public to the acknowledgment of a deed is not conclusive evidence of
the facts certified to by him, but the same may be rebutted by proof.

H. executed, acknowledged, and delivered a mortgage upon certain real estate belonging to
the wife. His wife signed the mortgage, and the notary certified that she acknowledged the
same on a private examination, separate and apart from her husband. The facts proved that she
had never in any manner acknowledged the same, and that she never received any part of the
consideration named in the mortgage. *Held,* That the acknowledgment on the part of the wife,
required by statute, is an essential part of the execution of the instrument, without which no in-
terest in the estate passes, and without such acknowledgment the mortgage is invalid so far as
the separate estate of the wife is concerned.

This is an action of ejectment brought in the District Court
of the Second District. Judgment was rendered therein in
favor of the above-named Defendant in Error, who was De-
fendant in said action, and against the Plaintiff in Error, who

was Plaintiff therein, and the case is now brought to this Court by Writ of Error.

The following is an abstract of the pleadings in said action :

The complaint alleges that on the 26th day of January, A. D. 1860, the Plaintiff became lawfully seized in fee simple of, and ever since has been, and now is, the owner in fee simple, and entitled to the immediate possession of the following real estate in Ramsey county, Minnesota, to wit : Lots 17 and 18 in Block 29, in Rice & Irvine's Addition to St. Paul.

That said premises, at last mentioned date were occupied by and in the possession of Defendant, and her late husband, William Hollinshead, now deceased ; that said premises are now in possession of Defendant ; that Plaintiff has demanded of said Defendant the surrender to him of the possession of said premises ; that Defendant refuses to deliver possession and wrongfully and unlawfully withholds possession thereof from Plaintiff, and demands judgment, that the Defendant surrender possession of said premises to him, and pay him damages for the unlawful withholding of the same, and for rents and profits thereof the sum of $600.

The answer of Defendant denies that Plaintiff was ever seized in fee simple of said premises, or that he ever was the owner of the same, or ever entitled to the possession of the same, or that she wrongfully or unlawfully withholds the possession thereof from the Plaintiff, and avers that she holds possession thereof rightfully.

And further says that at the time of the date and execution of the mortgage hereinafter referred to, and long prior thereto, she was seized in fee simple, and sole owner, and ever since has been and now is so seized of said premises in her own right ; that up to the time of the decease of her said husband, to wit, the 25th day of December, 1860, the said Wm. Hollinshead was in possession of said premises, and occupied the same with his family, consisting of this defendant and their children, and that since said time she has been in possession thereof.

That as she is informed and believes, Plaintiff claims title to said premises, under and by virtue of a certain mortgage and proceedings thereon, to foreclose the same as herein after stated, to wit :

That the said Wm. Hollinshead and George L. Becker, who were partners, as "Hollinshead & Becker," on the first day of October, 1856, made and delivered to Plaintiff their certain note, bearing date on that day, for the sum of $4,894 75, payable twelve months after the date thereof, with interest at the rate of two per cent. per month.

That the said Hollinshead & Becker, and Susanna J. Becker, wife of said George L. Becker, made and executed a certain mortgage to the Plaintiff, on the 21st day of November, 1856, whereby they conveyed certain real estate in said Ramsey county, of which said Becker was then the owner, and seized in fee simple, to wit : Lots one, two, and three in block thirty, in said Rice & Irvine's Addition to St. Paul, and also claimed to convey thereby, with said last-mentioned property, the premises described in the complaint, to the Plaintiff, upon the condition that if the said Hollinshead & Becker should pay to the Plaintiff said sum, according to the condition of said note, that the same should be void, in the usual form.

That on the 28th day of September, 1858, one Stephen H. Dodge, an assignee of said Plaintiff, caused a notice of the foreclosure of said mortgage to be published in a newspaper called the *Minnesotian*, (a copy of which notice is annexed to and made a part of said answer,) in the city of St. Paul, in said Ramsey county, whereby the said Stephen H. Dodge claimed that there was due on said note and mortgage, at the date of said notice, the sum of $7,650 30-100, and gave notice thereby, that said premises would be sold at public vendue to the highest bidder, on the 15th day of November, 1858, to satisfy said alleged claim, and costs of sale, and alleges that she has no knowledge or information sufficient to form a belief as to how long, or how often, said notice was published.

That on the said 15th day of November, 1858, one George W. Turnbull, a Deputy Sheriff of said county, sold the said premises, with the premises of said Becker, to said Stephen

H. Dodge, for the sum of $7,919 42-100, and avers that she has no knowledge as to whether the same were sold in separate parcels, except as to the lots of said Becker, which, as she is informed and believes, were so sold for the sum of $1,306,-47 each.

That Defendant is informed and believes that Plaintiff claims to own and hold the estate, title and interest of the said Stephen H. Dodge by some transfer or conveyance unknown to her, and as to which she has no knowledge or information sufficient to form a belief, and claims such adverse interest or title under and by virtue of said mortgage and proceedings of foreclosure.

The answer further stated that Defendant *signed* said mortgage at the time of the date thereof; that at such time and long prior thereto, she was a married woman, being then and since the wife of said William Hollinshead, in his lifetime; that at the time of so signing the same, she did not know the contents thereof, and that they had never been made known to her or explained to her by any one, and that she did not read the said mortgage at the time of signing the same; that she never was separately examined thereto by any officer, nor did she ever acknowledge the same; that said proceedings to foreclose the same were never made known to her, nor had she any knowledge, information or communication respecting the said mortgage or proceeding aforesaid, until she accidentally heard of the same in the early part of the year 1860, while in the State of Pennsylvania, but was up to said time wholly ignorant thereof; and when she heard of said proceedings, she supposed that she had no remedy in the premises, and was without redress; that she never received any consideration for signing said mortgage; that she is informed and believes that no greater sum was due upon said note at the date of said notice of foreclosure than the sum of $6,412, and at the time said premises were offered for sale, no greater sum was due on said note than the sum of $6,446; that no purchase money was ever paid by the said Stephen H. Dodge, or by the said Plaintiff upon said sale.

Said Defendant further says, that at and from the time the said premises were offered for sale, Plaintiff was fully inform-

ed as to all of said proceedings, and of the facts aforesaid, in connection therewith, and that he never gave any value or other consideration to said Stephen H. Dodge therefor.

And thereupon demanded judgment in her favor, that said proceedings of foreclosure and sale be set aside, and her title and estate freed from the cloud thereof, and for such other relief as might be just and equitable.

The reply of the Plaintiff to said answer denies that said Defendant was, at the time of the date of the mortgage referred to, or prior thereto, the sole owner of said premises, or seized in fee simple thereof, in her own right, but admits that up to the time of the decease of her said husband, said William Hollinshead was in the possession of said premises, and occupied the same with his family, consisting of said Defendant and their children, but avers the fact to be that said William Hollinshead, on and after the 15th day of November, 1858, did occupy said premises with his family, as lessee and tenant of Stephen H. Dodge, up to the 26th day of January, 1860, and after that time until his decease, as the lessee and tenant of the Plaintiff, who since said date has been the owner in fee simple of the same, at the yearly rent of $300, paid quarter yearly, at the end of each quarter, and with the condition that said Hollinshead should pay all taxes that should be assessed upon said property, and avers that said Hollinshead paid rent as aforesaid, at the rate of $75 each quarter of the year during the time aforesaid, with the exception of the quarter that expired next preceding his death, and denies that he or this Defendant have retained the possession of said premises except upon the terms and conditions as above stated, and as lessees as aforesaid, with which conditions the said Defendant, since the death of her said husband, has failed to comply.

And Plaintiff avers that he derived title to said premises under and by virtue of a conveyance by deed from Stephen H. Dodge, executed in due form of law on January 26, 1860, which deed, duly signed, witnessed and acknowledged, was recorded in the Registry of Deeds for Ramsey county, February 6, 1860, at 10 o'clock A.M., in Book " X " of Deeds,

page 6 ; and avers that said Stephen H. Dodge derived a title in fee to said premises, through and by virtue of a certain mortgage deed, executed by Wm. Hollinshead and Ellen R. Hollinshead, his wife, and Geo. L. Becker and Susanna J. Becker, his wife, on the 21st day of November, A.D., 1856, to one David B. Dodge, for the purposes and of the terms and conditions in said mortgage deed specified, (a copy whereof is set forth in said reply,) the terms and conditions being, that if the said Hollinshead & Becker, their heirs, &c., should well and truly pay, or cause to be paid, to the said David B. Dodge, his heirs, assigns, &c., the sum of $4,894 75, with interest semi-annually, at the rate of two per cent. per month, according to the conditions of a certain note given by said Hollinshead & Becker to said D. B. Dodge, bearing date October 1, 1856, and due twelve months after date ; then the said mortgage to be null and void, otherwise to be and remain in full force and effect. But if default should be made in the payment of said sum, the interest, or of any part thereof, at the time and manner therein specified, the said Dodge in such case was fully authorized and empowered by said grantors, in said mortgage deed, to sell the said thereby granted premises (which are the premises described in the answer herein,) at public auction, and convey the same to the purchaser in fee simple, &c., and out of the moneys arising from such sale, to retain the amount then due on said note, and costs and charges, and pay the surplus, if any, to the mortgagors, their heirs, &c.

And the Plaintiff avers that at the time specified in said answer, the note remaining unpaid, and default having been made in the conditions of said mortgage, the same was foreclosed by the assignee thereof as charged in Defendant's answer, and to that end said assignee caused said notice of foreclosure referred to, and made a part of said Defendant's answer, to be published more than six weeks prior to the day designated for said sale, once in each week in the daily *Minnesotian,* a newspaper published in said Ramsey county, and avers that on the day named in said notice for said sale, the same were sold in separate lots and parcels, and the lots and parcels described in the complaint were bid off by said Stephen H. Dodge separately, for the sum of $2,000

David B. Dodge v. Ellen R. Hollinshead.

each, and a certificate of sale given to him, as required by law, and a duplicate of the same duly filed in the Ramsey county Registry; and at the expiration of one year thereafter, no redemption from said sale having been had, the Sheriff of said Ramsey county did execute, in due form of law, and deliver to said Stephen H. Dodge, a deed of said premises, which deed was duly and properly recorded, &c.

The Plaintiff further avers that at the time said Defendant signed said mortgage deed, she well knew the contents of the same, and that the same had been made known and explained to her by the officer who took the acknowledgment thereof, and avers that she was separately examined thereto by said officer, duly qualified and acting as such officer.

The Plaintiff denies any knowledge or information sufficient to form a belief as to the allegation that the said proceedings to foreclose said mortgage were never made known to her, nor had she any knowledge, information or communication respecting either said mortgage or proceedings aforesaid, until she accidentally heard of the same in the early part of the year 1860, while on a visit in the State of Pennsylvania, but was, up to the time last aforesaid, wholly ignorant thereof; and that " when she heard of said proceedings she supposed she had no remedy in the premises, and was without redress." Therefore, he denies said allegations, and every part thereof, and avers that said Defendant received a consideration for signing said mortgage.

And avers that on the day when said premises were sold, there was due upon said note and mortgage the sum of, computing interest, according to the literal terms of said note, $7,871 17, and that none of the parties to said note or mortgage made any objection to the computation of interest upon said note at that rate, although notice was given them that interest was so computed.

And the Plaintiff denies that he from the time said premises were offered for sale, or at any time, was fully or otherwise informed as to all or any of said alleged irregularities in said proceedings, or of all or any of the facts charged in connection therewith, as vitiating said mortgage and sale, or the right of this plaintiff to recover the possession thereof; and

avers that he gave a complete and valuable consideration to said Stephen H. Dodge for said lots and premises.

Upon the trial, the Plaintiff first offered in evidence the mortgage mentioned in the pleadings, signed by William Hollinshead and Ellen R. Hollinshead and George L. Becker and Susanna J., his wife, to which was attached the following notarial certificate :

TERRITORY OF MINNESOTA, } ss.
    County of Ramsey.

Be it known that on this twenty-first day of November, A. D., 1856, personally came before me William Hollinshead and Ellen R., his wife, and George L. Becker, and Susanna J., his wife, to me personally known to be the same persons described in, and who executed the foregoing instrument, and acknowledged that they executed the same, and the said Ellen R. Hollinshead, and Susanna J. Becker being by me examined, separate and apart from their husbands, acknowledged that they executed the same freely and voluntarily, and without fear or compulsion from any one.

                Alex. Buchanan, Notary Public.

The introduction of said deed and evidence was objected to by the counsel for the Defendant, on the ground that no seal was attached to the signature of the officer who purported to have taken the acknowledgment thereof, and therefore the deed was not proven ; and thereupon Alexander Buchanan, the notary whose signature was affixed to the certificate of the acknowledgment of said deed, was called, who being duly sworn, and the said deed being exhibited to him, and his attention being called to his said signature, testified : This is my signature as notary public, and as subscribing witness.

Being cross-examined by the counsel for the Defendant, he said : I think I affixed the signature in my office ; I have no recollection that Mrs. Hollinshead was present ; I affixed it at the request of Mr. Hollinshead ; I have no recollection as to this particular deed. And thereupon said mortgage was read in evidence.

David D. Dodge v. Ellen R. Hollinshead.

The counsel for the Plaintiff next offered in evidence the promissory note upon which said mortgage deed is predicated, and also the certificate and proofs of the foreclosure of the mortgage, the Sheriff's deed, and other documentary evidence, showing title in the Plaintiff.

It was admitted by the Defendant that due demand had been made by the Plaintiff prior to the commencement of this action, for the possession of said premises, and that the Defendant refused to surrender the same.

And here the Plaintiff rested his case.

And then the counsel for the defence called Alexander Buchanan, a witness, who being sworn, testified as follows :

*Question.*—State the facts and circumstances connected with the signature of this mortgage.

Objected to, as varying and contradicting his official act, and incompetent and immaterial, which objection was overruled, and exception taken.

As far as I can recollect the circumstances, Hollinshead & Becker were owing a sum of money to Mr. Dodge ; I was their confidential clerk in their office ; I think likely Hollinshead & Becker, or both, would come to me and say, " these were their signatures," and I think I would put my signature to the certificate ; I know their signatures as well as I know my own ; there is an impression on my mind that Mrs. Hollinshead did not acknowledge it personally ; I have no doubt that my signature was affixed at the office of Hollinshead & Becker ; I should think I did not see her sign it.

Being cross-examined, the witness said :

I took the acknowledgment of many deeds for them ; I could not possibly tell *what deeds* I actually took the acknowledgment of ; I might have taken the acknowledgment of this deed, but don't think I did ; I am not testifying from my recollection in this case, but from the way business was done in that office.

The Defendant's counsel next called Ellen R. Hollinshead as a witness, who being sworn said :

vol. vi.—5

David B. Dodge v. Ellen R. Hollinshead.

I am the Defendant, and wife of Mr. Hollinshead ; I reside upon the premises in dispute ; I do not recollect ever having seen the mortgage before the present time ; it has my signature.

All parol testimony tending to contradict or vary the official certificate of the notary, is objected to as incompetent, and objection overruled and exceptions taken.

I know Mr. Buchanan ; I never knew that such a paper was brought me ; I recollect no circumstances connected with my signing this paper ; I first heard of it in Philadelphia in 1859, between the 20th and 25th of December of that year ; I had never heard of it before ; I never knew that Mr. Hollinshead had given any mortgage upon the property, except a prior one to Mrs. Conduit ; I never acknowledged this mortgage before Mr. Buchanan ; I never signed but one paper in that office in my life, and that related to another matter which I did know of ; it was a matter between Mr. Banfill and Major Fridley and Mr. Hollinshead ; I did not acknowledge this mortgage ; I am positive I did not acknowledge it at the house ; I have always signed at the house such papers as were sent to me ; I never acknowledged any of these.

*Question.*—State whether the contents of that paper were read or explained to you.

Objected to as incompetent and immaterial, which objection was overruled, and exception taken.

*Answer.*—It never was ; no officer ever examined me as to the execution of the instrument, or as to whether it was my act or deed ; I never knew until after it was sold that there was a mortgage on the place, and I heard that in Philadelphia, as I said before.   Mr. Hollinshead never gave me any information in regard to it.

I supposed it was no use to object then ; I never received any consideration or value for signing that mortgage.

Being cross-examined, the witness testified :

I was not accustomed to be called to sign very many instruments ; I used to sign everything my husband sent me ; I had

a conversation about the place with Mr. Hollinshead, after my return in 1860.

He said he intended to redeem it, and I supposed I should still have the right to redeem ; no compulsion was used to obtain my signature ; I never read what I signed ; I usually received a note from my husband, asking me to sign the accompanying paper ; I would have refused to sign this one— not any other ; I always signed papers when they were sent to me.

Patrick O'Brien, being called by the defence and sworn, testified as follows :

I have been a clerk in the office of Hollinshead & Becker since 1854 ; this is my signature as one of the witnesses ; I know Mr. Buchanan ; I don't know anything about this deed particularly, but I generally took the deeds over to the house for Mrs. Hollinshead to sign ; Mr. Buchanan signed the certificate in the office ; I believe deeds were always executed in that way.

Here the Defendant rested her case.

It was admitted by the Plaintiff and Defendant that Mrs. Hollinshead was the owner of the property in controversy in her own right, at the date of the execution of the mortgage to the Plaintiff.

And the Defendant rested her case.

And the jury retired, and rendered the following special verdict :

ISSUES TO BE SUBMITTED TO THE JURY.

1st. Did the Defendant acknowledge the mortgage described in the pleadings ?

*Answer.*—She did not.

2d. Were the contents of said mortgage made known to her at the time she signed the same ?

*Answer.*—They were not.

3d. Were the contents of said mortgage fraudulently concealed from her ?

*Answer.*—They were not.

4th. Did she sign said mortgage voluntarily, without knowing or reading the contents of the same?

*Answer.*—She did.

5th. Was the Defendant ever examined by the notary public, or any other officer, as to the contents and execution of said mortgage?

*Answer.*—She was not.

6th. Did the Defendant ever know of the said mortgage and foreclosure proceedings, and if yea, when did she first know of them?

*Answer.*—Yes, in January, 1860.

7th. Did the Defendant receive any consideration for signing said mortgage, and if so, what?

*Answer.*—She did not.

8th. The conveyance from Stephen H. Dodge to D. B. Dodge was in consideration of the original assignment of the mortgage from D. B. Dodge to Stephen H. Dodge, which was intended as a gift from D. B. Dodge to his son, Stephen H. Dodge.

9th. The notice of foreclosure of said mortgage was duly published the requisite time by law required.

10th. Were the mortgaged premises sold in separate parcels, under said notice, and in pursuance thereof, at the time therein specified?

*Answer.*—Yes, they were.

11th.—Were duplicate certificates of sale given as required by law?

*Answer.*—Yes, they were.

12th. Have said mortgaged premises been redeemed from said sale?

*Answer.*—They have not.

13th.—Did the Defendant remain in said premises, living with her husband, who was lessee of the same from the Plaintiff, after she had knowledge of her rights claimed by the Plaintiff, without asserting the rights claimed by her, and if so, how long?

*Answer.*—Yes, she has, since January, 1856.

14th. Did Stephen H. Dodge bid off said premises at said mortgage sale?

*Answer.*—Yes, he did.

15th. Has he received a Sheriff's deed therefor?

*Answer.*—Yes, he has.

16th. Has he conveyed his title, acquired by the mortgage sale and deed, to the plaintiff?

*Answer.*—Yes, he has.

17th. Is Exhibit " A " the mortgage referred to in the pleadings in this case?

*Answer.*—Yes, it is.

18th. Did the Plaintiff part with any consideration or value for the said note and mortgage?

*Answer.*—Yes, he did.

19th. At the time of signing said mortgage, did the Defendant sign her name knowingly, with the intention of mortgaging or conveying the premises in question?

*Answer.*—No, she did not.

20th. Was the Defendant induced to sign said mortgage by means of fraud or misrepresentation on the part of the Plaintiff, as to the nature of its contents, or in any other respect?

*Answer.*—No, she was not.

And thereafterwards, upon motion on the part of both Plaintiff and Defendant for judgment upon the verdict, His Honor, E. C. Palmer, Judge of the District Court of the Second Judicial District, in the State of Minnesota, rendered and filed the following decision:

The main question involved in the determination of this motion is whether an instrument purporting to be a mortgage upon the separate estate of a married woman is valid when the same has been signed by the married woman, in ignorance of its nature and contents, and has not been acknowledged in point of fact, though it bears on its face the usual certificate of acknowledgment, duly attested under the seal of a notary public.

On the trial of the cause it was objected that the notarial certificate was conclusive on the question of acknowledgment, and that parol testimony could not properly be received to contradict it. This objection was overruled, and the testimony admitted under section 26, page 400, of the Compiled Statutes, which reads as follows: "All conveyances, and other instruments authorized by law to be recorded, and which shall be acknowledged or proved as provided in this chapter, * * * * may be read in evidence in any court within this Territory (State), without further proof thereof, *but the effect of such evidence may be rebutted by other competent testimony.*"

The jury found that the notary had certified to what was not true, and that the Defendant had not been examined by him, and had never acknowledged in any form or at any time the execution of said instrument. In view of this leading fact is the instrument valid, and has the foreclosure of it by the Plaintiff given him any title to the premises described therein?

Whatever right a married woman possesses to convey her title to or interest in real estate, is derived solely from statute.

It is not a common law right, and in this respect married women occupy a different position from other persons who labor under no such disability in respect to the conveyance of property. The latter possess a natural right to convey or encumber their property—a common law right which statutes may regulate but not abrogate, and hence such persons are sometimes held to be bound, on equitable grounds, by attempted conveyances of their property, when the requirements of the statute on the subject have not been strictly complied with, but in the case of a married woman, the statute not merely regulates the mode of conveyances, and prescribes certain formalities necessary to be observed to entitle such conveyances to the benefit of the registry law, but it creates the right itself by separating the legal existence of the wife from that of her husband, and clothes her with the power to do what she pleases with her own under certain restrictions and qualifications, which vary in different States, and are more or less important in all. In this State, by our

Statute, these restrictions and pre-requisites are very impor-tant, as showing that the wife still continues under a modified disability in respect to the conveyance of her property, and is still regarded, to some extent, as being under the control of her husband, and liable to be unduly influenced in all business matters by his dominating will and more experienced judgment. Thus she cannot convey at all, except by consent of her husband, and her conveyance must be acknowledged, so as to insure its being her own free, voluntary, independent act. Until it appears that these two things concur, her conveyance cannot be said to possess any legal validity—the law creating her right to convey evidently makes these things essential to her exercise of the right, or rather makes the right dependent on the existence, in point of fact, of the ex-press consent of her husband, and the acknowledged freedom of the wife.

The signing of the instrument is a mere physical act, not indicating, in the eye of the law, even mental consent. It is presumed to have been done under coercion, and can have no effect as a legal act until it receives validity through the means provided by law. It is the acknowledgment, there-fore, and not the signature of the married woman that gives validity to her conveyance, and she would be as much estop-ped to deny her deed, were it properly acknowledged but not signed, (her husband consenting,) as he would be in case his own deed was signed but not acknowledged, and this upon the ground that the essentials of a conveyance, by a married woman, so far as the right and intent to convey are concern-ed, consists in the consent of her husband, and in the fact of her examination, by an acknowledgment to the proper legal authority, that it is her free, unbiassed will, to part with her property.

Such being the origin and nature of the right of married women to convey property, and the mode and manner pre-scribed for its exercise, it is obvious that an instrument not ex-ecuted in substantial, if not strict conformity to the statute, is void as a legal instrument, and cannot be upheld and en-forced.

The doctrine is too well settled and familiar to require cita-

tion of authorities in its support, that, when a right is given or created by statute, and the mode of its exercise prescribed, the provisions of statute must, in general, be strictly pursued, or the act will be void. This principle is peculiarly applicable to cases where persons, long unrecognized as having any legal existence, and suddenly quickened into life are invested with rights and privileges never possessed or granted before; for the very fact that such persons are, as it were, enabled to act in a particular manner, implies not only that it is independent and dangerous for them to act in any other manner, but that the old disability remains.

That this is the true view in relation to conveyances of property within this State, by a married woman resident here, is further apparent from Section 13, page 398, of the Compiled Statutes, which provides that "When any married woman, not residing in this Territory (State), shall join with her husband in any conveyance of real estate situate within this Territory (State), the conveyance shall have the same effect as if she were sole, and the acknowledgment or proof of the execution of such conveyance by her, may be the same as if she were sole."

This section is evidently based on the fact, that the law of other localities on this subject is not similar to our own, and that it is proper to permit a married woman, resident elsewhere, to convey her property, situated here, in the manner in which she might convey, if she were unmarried; but when she resides here, and her person is subject to the laws of this jurisdiction, no such liberty or right is given her. It has been thought best to surround her with safeguards, and to endeavor to counteract and render harmless those peculiar influences to which the marital relation subjects her by provisions which enable her to have a will, and to exercise it freely.

In the case at bar, the Defendant never consented to part with her property, though no fraud was used, nor any undue influence brought to bear upon her, since she signed the mortgage voluntarily, though in ignorance of what it was; yet she never pretended to have any intention to convey her homestead in any manner nor for any purpose. She so far trusted her husband as to sign the paper he sent her, but she

expressly states that had she known the character and contents of the instrument, she would not have signed it.    The circumstances under which her signature to the instrument was procured, and the notary made to certify to the complete execution of the instrument, show that while no actual fraud was contemplated, the result will amount to a fraud upon her if the mortgage be held valid; for the case shows that it was given to secure, not her debt, but an old claim against the firm of Hollinshead & Becker, and that she never received any consideration whatever for the alleged execution of this mortgage upon her own separate property, which at the time was and still is occupied by her as a homestead.

Whatever hardships may exist in this case, and it is undeniable that one party must suffer, is mainly attributable to the failure of the notary to perform his duty in the manner prescribed by law.    And while I do not think that either the notary, or the husband of the Defendant, acted dishonestly in the matter, or artfully intended to deceive or defraud either the Plaintiff or Defendant, it cannot but be regretted that so grave a business transaction was so carelessly conducted, and so important an official act was so unfaithfully performed—the result is the same as if actual fraud existed.    Upon the whole, therefore, the motion of the Defendant must be granted, and judgment entered in her favor, according to the prayer of her answer.

To which decision and finding of said Court, the Plaintiff, by his attorneys, Sanborn & Lund, objects, and to said verdict, and the ruling of the Court upon the introduction of testimony in said case :

I.  Because said decision is contrary to the law of the case and is not supported by the verdict in said action.

II.  Because said verdict is erroneous, in that it is against the evidence in the case and the weight of evidence.

III.  Because the Court erred in allowing the introduction of incompetent and immaterial testimony on the trial of said cause, which was objected to at the time, as incompetent and immaterial and the objections overruled by the Court,

Points and authorities of Plaintiff in Error.

I. The certificate of the acknowledgment to a deed affixed thereto by an officer empowered to take acknowledgments, and regular upon its face, is conclusive evidence of the matters contained therein, and cannot be aided or disproved by parol testimony. *Greene vs. Godfrey*, 44 *Maine*, 25; 4 *Greenleaf's Cruise on Real Prop.*, Title 32, *ch.* 2, *sec.* 24, *note* 1; *Jameson vs. Jameson*, 3 *Whart.*, 457; *Harrell vs. Elliott*, 1 *Tayl.*, 139; *McNeely vs. Rucker*, 6 *Blackf.*, 475; *Bessett vs. Bessett*, 1 *Har. & McHen.*, 211; *Rigley vs. Howard*, 3 *Har. & McHen.*, 211; *Barrett vs. Shakelford*, 6 *J. J. Marsh*, 532; *Hartley vs. Frosch*, 6 *Texas*, 208; 3 *Peters*, 328; *Bancks vs. Ollerton*, 26 *Eng. L. & Eq.*, 508; *Bancks vs. Ollerton*, 26 *Eng. L. & Eq.*, 543 *and Note.*

II. As between parties to a mortgage, the certificate of acknowledgment is unnecessary to its validity, provided its execution and delivery be proved. 28 *Barb.*, 421, *Watson vs. Campbell*; 3 *McLean*, 362, *Strong vs. Smith;* 2 *Black*, 32, *Wayman vs. Naylor;* 4 *Green*, 82, *Gould vs. Woodward ;* 7 *Shepley*, 413, *Beamen vs. Whitney*; 5 *B. Munroe*, 471, *Gregory vs. Ford*; 5 *Blackford* 92, *Stevenson vs. Cloud*; (and in this case without subscribing witnesses ;) 13 *New Hamp.*, 389, *Wark vs. Willard*; 12 *Met.* 157, *Dale vs. Thurlow*; 2 *Foster*, 468, *Brown vs. Manton*; 6 *Mass.* 24, *Marshall vs. Fisch*; 21 *Miss.* 307, *Hill vs. Samuel*; 5 *Cal.*, 315, *Hastings vs. Vaughn*; 17 *Barb.* 662, *Blood vs. Humphrey.*

III. Under our Statute a *feme-covert* has all the ability of a *feme-sole* to acquire, hold and alien her estate, with the single exception that she shall not alienate her lands without the consent of her husband. *Pub. Stat.*, *ch.* 5, *sec.* 2; *Pub. Stat.*, *ch.* 61, *sec.* 105. And it is questionable if she could not exercise these rights without the aid of the Statute. *Blackstone's Com.*, vol. 1, *Book* 2, (*Chitty,*) *p.* 236, *note* 12, and the authorities there cited ; *Adams' Eq.*, *p.* 45, and authorities there cited ; *Willard's Eq. Jurisprudence, p.* 643.

And there seems to be no good reason why a married woman, after all her disability to hold and convey real estate

is removed, with the exception that she must have her husband's consent, should stand in any different position as to rights and liabilities from that of a *feme sole*, or men generally, with that exception.

In this case the Defendant asks the Court to adopt the novel principle that a *feme-covert* may act negligently and carelessly in regard to her separate property, and in such a manner as to induce other and innocent parties to part with their property on the strength of her acts, and when such parties claim their legal rights, which they have every reason to believe she has given them, and upon the strength of which they have acted, the plea of the disability of coverture shall be a bar to them all.

There is no pretence of fraud or imposition in this case, and it would be strange if the disabilities of coverture or infancy could be used to shield parties from their legal and assumed liabilities.    4 *Barb.*, 553, *Strong vs. Skinner.*

IV. When a grantor in a deed of conveyance or indenture of mortgage, claims the conveyance or mortgage to be void, and that she is still the owner of and entitled to the possession of the premises purporting to have been conveyed, with knowledge of all the facts, has silently suffered the grantee, for a long period of time, to act upon the strength of her conveyance, and take possession of the premises, and exercise acts of ownership thereon, relying upon his conveyance, and the acts of acquiescence on the part of said grantor, said grantor is estopped from setting up the illegality or insufficiency of her own acts and deeds, to give the possession and ownership claimed by the grantee.

The law will presume, and in this case it is a matter of fact, that the grantee has been prejudiced under these circumstances.

Points and authorities of Defendant in Error.

I. The alleged mortgage of the Defendant, under which the Plaintiff claims, never having been acknowledged, as required by statute by the Defendant, she being a married woman, was no deed, and absolutely null and void as to her.

*Bacon's Ab.*, *Baron & Feme*, *I.*, 2 *vol.* *p.* 52, *&c.*, *Am. Ed* ; 2 *Hilliard on Real Property*, 472, *note;* 2 *Kent's Com.*, 150, *Elliott vs. Piersol*, 1 *Peters*, 338–9; 7 *Curtis*, 606–7; *Martin vs. Dewley*, 6 *Wend.*, 12; *Doe vs. Howland*, 7 *Cowan*, 277; 1 *Peters*, 606; *Evans vs. Commonwealth*, 4 *Serg. & R.*, 272; *State vs. Thompson*, 14 *Serg. & R.* 94; *Jourdan vs. Jourdan*, 9 *Serg. & R.*; 268; *Hawkins vs. Burns*, 1 *Har. & J.*, 573; *Jacob vs. Kramer*, 1 *Har. & J.*, 291; *Jackson vs. Caines*, 20 *Johns*, 300; *Gellett vs. Stanley*, 1 *Hill*, 121; *Jackson vs. Stevens*, 16 *Johns*, 113; *Doe vs. Howland*, 7 *Cow.*, 277; *People vs. Galloway*, 17 *Wend.*, 540; *Jackson vs. Perkins*, 2 *Wend.*, 317; *Jackson vs. Schoonmaker*, 4 *Johns*, 162; *Jackson vs. Tracy*, 12 *Johns*, 469; *Thurman vs. Carman*, 24 *Wend.*, 87 & 92; *Sanford vs. McLean*, 3 *Paige*, 122; *Knowles & McCamby*, 10 *Paige*, 316; *Lucas vs. Cobb*, 1 *Dev. & Balt.*, 228; *Phillips vs. Green*, 3 *A. K. Marsh*, 7; *Linsey vs. Brown*, 13 *Conn.*, 192; *Sibley vs. Johnson*, 1 *Manning*, 380–4; *Demeye vs. Campan*, 4 *Mich*, 565–7; *Stevens vs. Doe*, 6 *Blackf.*, 475; and so generally in all the States, except Massachusetts, where immemorial colonial usage has established a contrary doctrine. *Bowler vs. Schearer*, 7 *Mass.* 21.

Nor is such a deed good by way of estoppel. *Parker vs. Manning*, 7 *T. R.*, 539; *Stephens' Nisi Prius*, and authorities cited, *p.* 713. Nor in Equity. See New York authorities cited.

The Statutes of Minnesota render the acknowledgment of a married woman essential to the validity of her deed, in accordance with the general rule, except where she resides out of the State. *Sec. 44, ch. 34, Comp. Stats.*, 395; also, *secs.* 2, 12, *and* 13, *ch.* 35, *pp.* 397–8, which are in *pari materia*, and to be construed together; and see *Sec.* 2, of *Act of 24th Feb.*, 1770, *Pennsylvania, Dunlop's Digest*, 94, and authorities cited.

II. As to the exception of the Plaintiff in Error to the admission of parol proof negating the acknowledgment.

Such an acknowledgment being extra-judicial and exparte, is only *prima facie* evidence of verity. *Jackson vs. Schoonmaker*, 4 *Johns*, 161; *Jackson vs. Perkins*, 2 *Wend.*, 308; *Morris vs. Keys*, 1 *Hill*, 540; *sec.* 26, *ch.* 35, *Comp. Stats.*, *p.* 400.

. There is no other mode of contesting it except by parol— it is analogous to an inquiry into the jurisdiction of the Court. When suit is brought upon a judgment of another State, it is competent to show, as in this case, that the party was never in court or before the officer. *Starbuck vs. Murray*, 5 *Wend.* 149, and authorities cited; *Theodore vs. Blackbourne*, *N.N.* 246; *Benton vs. Burgot*, 10 *Serg. & R.*, 240; *Aldrich vs. Hen, ney*, 4 *Conn. R.*, 280; 1 *Greenleaf on Ev.*, sec. 548.

Our Statute allowing the deed or acknowledgment to be rebutted by competent " *testimony*," shows that oral testimony was intended. *Comp. Stats. p.* 400; 2 *Bouvier's Law Dict.*, " *Testimony*," *page* 562.

The certificate of the notary, not being under seal, was not a record, and did not prove the acknowledgment, *per se. Sec.* 9, *ch.* 4, *Revised Stats.*, *p.* 44; sec. 93, *ch.* 5, *Compiled Stats.*, 133; 1 *Greenleaf's Ev.*, sec. 503. And the Plaintiff being required to prove the certificate by oral testimony, it was competent to rebut it by the same kind of testimony. The notary at the same time being a subscribing witness, the Defendant had a right to his testimony as to the execution of the deed.

IV. As to the exception to the refusal of the Court to grant a nonsuit to the Plaintiff, against the objection of the Defendant, the Defendant having set up an equitable counter claim. *Sec.* 24, *ch.* 57, *Comp. Stats.*, 481; *subdivision* 1, *of sec.* 170, *ch.* 60, *Comp. Stats.*, *p.* 554.

V. The equitable counterclaim of the Defendant entitled her to a resale under the facts proved and admitted in the pleadings (in case her defence at law did not succeed), under the decisions of this Court. *Talcott vs. Marston*, 3 *Minn. R.*, 339; *Bidwell vs. Whitney*, 3 *Minn. R.*, 76; *Johnson vs. Williams*, 4 *Minn. R.*, 260.

SANBORN & LUND, Counsel for Plaintiff in Error.

HORN & GALUSHA, Counsel for Defendant in Error.

*By the Court.*—ATWATER, J. The counsel for the Plaintiff in Error claims that the certificate of the acknowledg-

ment to a deed, affixed thereto by an officer empowered to take acknowledgments, and regular upon its face, is conclusive evidence of the matters contained therein, and cannot be aided or disproved by parol testimony. Such a rule may have been adopted in some of the States, but certainly not in others, as see 4 *John.*, 161; 12 *John.*, 468; 2 *Wen.*, 308; 1 *Hill*, 540. But in this State we think the Statute conclusive on the subject. *Sec.* 26, *p.* 400, *Comp. Stat.*, provides that " all conveyances and other instruments authorized by law to be recorded, and which shall be acknowledged or proved, as provided in this chapter, * * may be read in evidence in any court within this Territory, without further proof thereof ; *but the effect of such evidence may be rebutted by other competent testimony.*" In order to introduce the deed, &c., in evidence, therefore, it must have been acknowledged, when it becomes *prima facie* evidence of the matters to which it relates, but the Legislature has provided that such evidence shall not be conclusive. It was strenuously urged upon the argument, that to permit the certificate of the officer taking the acknowledgment to be contradicted by parol proof, would be productive of the most pernicious results, and greatly tend to unsettle the title to real estate. The objection is not without force, although strong reasons may be urged in opposition to this view ; yet the regulation of this matter is, doubtless, legitimately within the scope of the law-making power, and where the Legislature has prescribed the rule which is to govern, courts are not at liberty to disregard it.

As a married woman, at common law, is regarded as incapable of making any contract, so she, of course, can only convey her real estate as authorized by the Statute. The old method of alienation or grant by the wife, by fine and recovery, attended by all the formalities and solemnities usual in courts of justice, illustrates the extreme caution exercised with reference to these acts of the wife; or, rather, the protection thrown around her by the courts in the act of disposing of her real estate. For the main object of this somewhat troublesome and expensive proceeding was not for the purpose of restraining the wife in the disposition of her property, but to see that no improper influences were inducing thereto.

More recent legislation has dispensed with the unnecessary forms which formerly obtained, but carefully preserved the substance, in providing in nearly, or quite all the States, that some public officer should certify to an examination of the wife apart from the husband, and that she executed the instrument of her own free will, and without fear or compulsion. And upon no branch of the law relating to the rights of persons, have the decisions of the courts been more emphatic and uniform than in holding that the conveyance of real estate by a *feme covert* must be strictly in accordance with Statute, in order to give it validity.

This is an action of ejectment, and the Plaintiff must stand or fall upon his legal title, and cannot invoke the equitable power of the court to enforce the contract which it is claimed the Defendant, Mrs. Hollinshead, has entered into. And, indeed were the form of the action different, no equities are shown as against the Defendant in Error, since she received no consideration for signing the mortgage, nor, in fact, was the mortgage given in consideration of an advance of money, but to secure an old debt or claim against the husband of Mrs. Hollinshead and another. Our inquiry herein, therefore, must be limited to the question as to whether the Defendant in Error has conveyed the premises in dispute in the manner required by law.

Our own statutes have, in several instances, recognized the disability under which the married woman labors in the disposition of her real property, and the undue influence liable to be exercised upon her by her husband in regard thereto ; and have provided that she may dispose of it upon one condition, (the consent of the husband,) and have pointed out the manner in which such conveyance shall be made. The particularity with which the form of an acknowledgment of a conveyance of real estate by a married woman is described, and the fact that in the several instances where such conveyance is spoken of, whether as made directly, or through the intervention of an attorney, this form of acknowledgment is required, is strong evidence to show that the Legislature considered this as of the essence of the execution of the instrument, and necessary to constitute a valid conveyance. In the execu-

tion of a power by a married woman by grant, such grant shall be acknowledged by her on a private examination, as in case of deed, and shall not be valid unless so acknowledged. (*Comp. Stat. p.* 395, *sec.* 44.) The power to convey her real estate is given to the wife by *sec.* 2, *p.* 397, *Comp. Stat.*, and the manner in which the instrument shall be executed is prescribed in *sec.* 12, *p.* 398, which provides that " when any married woman residing in this Territory (State) shall join with her husband in a deed of conveyance of real estate, situate within this Territory, the acknowledgment of the wife shall be taken separately, apart from her husband, and she shall acknowledge that she executed such deed freely, and without any fear or compulsion from any one." And the Act of February 24, 1857, authorizing married women to convey real estate by power of attorney, (*Comp. Stat.*, *p.* 402,) makes the same provision with reference to acknowledgment by the wife, and legalizing conveyances theretofore made, where the examination of the wife had not been taken separate and apart from her husband. The fact that a special act was deemed necessary to legalize such conveyances, affords strong ground for the presumption, that in the view of the law-making power, at least, such conveyances were invalid. Nor can there be any stronger reason for requiring such examination in the execution of a power of attorney authorizing another to convey, than where the conveyance is made directly by the wife. The object of the acknowledgment is the same in both cases.

That the acknowledgment required by section 12, above quoted, is to be regarded as an essential part of the execution of the instrument, is, I think, further manifest from the language of the next succeeding section. This provides that " when any married woman, not residing in this Territory, shall join with her husband in any conveyance of real estate, situate within this Territory, the conveyance shall have the same effect as if she were sole, and the acknowledgment or proof of the execution of such conveyance by her, may be the same as if she were sole." I think the learned Judge who tried the case below, appropriately remarks on this provision, that " this section is evidently based on the fact, that the law of other localities on this subject is not similar to our

own, and that it is proper to permit a married woman resident elsewhere to convey her property situated here in the manner in which she might convey it if she were unmarried. But when she resides here, and her person is subject to the laws of this jurisdiction, no such liberty or right is given her. It has been thought best to surround her with safeguards, and to endeavor to counteract and render harmless those peculiar influences to which the marital relation subjects her, by provisions which enable her to have a will, and to exercise it freely."

At the common law two things were deemed essential to enable a *feme covert* to convey her lands : 1st. The concurrence of her husband ; and, 2dly, That the act be ascertained in the mode prescribed by law to be voluntary on her part, and not from fear or compulsion of her husband. (4 *Coms.*, 9.) Now it will be observed that our Statute has retained these two requisites in conveyances by married women, the only difference being that the Statute has changed the manner in which these requisites are to be ascertained, and there can be no more reason for holding that the private examination of the wife may be dispensed with, than that the husband need not be joined. And yet it is universally held, that the husband must join in the wife's deed in order to render the same valid. It was held in New York (by a divided Court,) that the husband need not join in a mortgage of the wife's property, but that was based on their statute, which materially differs from ours, and even there it was not claimed that the common law rule requiring the concurrence of the husband, could be dispensed with, save as provided by statute. And such may be considered the settled rule in all or nearly all the States, as well as in England, at this time. Chancellor Kent, in treating of this subject, says : " Upon this view of our American law on the subject, we may conclude the general rule to be that the husband must show his concurrence to the wife's conveyance by becoming a party to the deed, and that the cases in which her deed, without such concurrence, is valid, are to be considered exceptions to the general rule." (2 *Kent's Com.*, 154).

But, in fact, if either of these requisites might be dispensed

with, there is stronger reason for regarding the acknowledgment of the wife as much the most important, for by reference to the mode of conveyance by fine, it will be seen that the *feme covert* might bar herself and her heirs by a fine levied solely by herself, without her husband, if he did not enter and avoid the estate granted ; and the reason given is because she was *examined and had power of the land.* (10 *Coke,* 43.) But I find no instance where a conveyance by the *feme covert,* under that form has been held good for any purpose without the private examination of the wife. The disability of a married woman to convey her lands by deed, was not supposed to arise from want of reason, but because by her marriage she was placed under the power and protection of her husband ; and it was upon that ground that the separate examination of such woman on a fine was good, because when delivered from her husband, her judgment was supposed to be free. (3 *Atk.,* 712). The reason for this separate examination exists just as strongly at the present day as ever, since the power and control of the husband over the wife is in theory, if not in practice, the same as it has ever been. And as the great object which the common law aimed at was to ascertain whether the wife, in the transfer of her estate or interest in real estate, acted under fear or compulsion of her husband, so has the same been the paramount object in legislative enactments on the subject, and has been recognized in all the judicial determinations which have been made on the question. In *Gillett vs. Stanley,* 1 *Hill,* 121, where the question arose as to conveyance by married women, Bronson, J., in delivering the opinion of the Court, says : " There was no such acknowledgment as the statute required for passing the estate of a *feme covert ;*" and that " without an acknowledgment on a private examination, &c., the deed was a mere nullity." In *Meriam vs. Harsen,* 2 *Barb. Ch.* 232, the question came directly before the Court as to the sufficiency of the acknowledgment by a married woman. The officer certified that " the said Catharine, being examined by me, privately and apart from her husband, acknowledged that she executed the same without any fear, threat, or compulsion of her husband." The word *freely,* required by the statute, was omitted, and it was

strenuously contended that this was sufficient to invalidate the conveyance.   The Court held the acknowledgment sufficient, and that it was not necessary that the certificate should be in the precise words of the statute, but clearly intimating that unless the requirements of the statute had been substantially complied with, the conveyance would not have been good.

The statute of New York, it may be remarked, with reference to the acknowledgment of deeds by married women, is precisely the same as our own, but there is a provision, declaring that instruments not so acknowledged shall be void. We do not understand, however, that this added anything to the force of the statute prescribing the form of acknowledgment, but was only declaratory of the effect necessarily resulting from a failure to comply with the statute.   As this right or power to convey is created by statute solely, so all the forms or restrictions imposed by the statute in order to its enjoyment, must be observed and complied with.   The adjudications of the Courts of New York upon this question, are, therefore, entitled to the same weight as their decisions upon any other subject where the statute law of the two States is the same.   And the same is true of the decisions in many other States, whose statutes are nearly, or precisely the same as our own in this regard.   As these decisions are numerous, and nearly uniform, it is unnecessary to examine them at length, or to do more than cite some of the most prominent. *Jackson vs. Cairns,* 20, *John.,* 301; *Jackson vs. Stevens,* 16 *John,* 109; *Jackson vs. Schoonmaker,* 4 *John.,* 161; *Martin vs. Dwelley,* 2 *Wen.,* 9; *Meriam vs. Harsen,* 2 *Barb. Ch.* 232 ; 2 *Kent's Com.,* 167; *Elliott vs. Piersol,* 1 *Peters,* 338; *People vs. Galloway,* 17 *Wend.,* 540; *Sanford vs. McLean,* 3 *Paige,* 122; *Knowles vs. McCamley,* 10 *Paige,* 346; *The Albany Fire Insurance Co. vs. Bay.,* 4 *Coms.,* 9; *Reeves' Domestic Rel.,* ch. 8; *Sibley vs. Johnson,* 1 *Manning,* 383; *Dewey vs. Campow,* 4 *Mich.,* 567; *Doe vs. Howland,* 8 *Cow.,* 277; *Clark vs. Graham,* 5 *Curtis,* 173; *Constantine vs. Van Winkle,* 2 *Hill,* 240; *Evans vs. Commonwealth,* 4 *Serg. & R.,* 272; *Steele vs. Thompson,* 14 *Serg. & R.,* 94; *Jourdon vs. Jourdon,* 9 *Serg.*

& R., 268; *Stevens vs, Doe*, 6 *Black.*, 475; *Mott vs. Smith*, 16 *Cal.*, 533; *Johns. vs. Reardon*, 11 *Mary.*, 465.

It is claimed by the Plaintiff in Error, that even if the mortgage was insufficient to convey the legal estate of Mrs. Hollinshead in the premises, she ought not now to be permitted to set up such defence, having long slept upon her rights, and suffered the grantee to act upon the strength of his conveyance without asserting her claim to the property. It appears from the testimony that she first became aware of the fact that these lots were mortgaged in December, 1859, while in Pennsylvania, and that she thought it was then of no use to object. Aside from the fact that the Plaintiff claims only a legal interest, and sets up no equities against the Defendant, it does not appear that Mrs. Hollinshead has not asserted rights at the first opportunity afforded her, after her knowledge of the existence of the mortgage, nor that since that period the Plaintiff has suffered any injury from her neglect or failure to adopt active measures to have her rights litigated. It is unnecessary, therefore, to decide whether the Court would permit a *feme covert* to assert her legal rights, (in a case like the one at bar,) as against an innocent purchaser, but it certainly would be most safe and prudent for the wife, as soon as informed that her rights are, or are likely to be prejudiced in this manner, to take such measures as may be in her power to prevent the injury to herself, and further loss to others.

The evidence in the case is clear and conclusive, that the contents of this mortgage were unknown to Mrs. Hollinshead at the time of signing the same, that she supposed it to be other property than it actually was; that she never received any consideration for signing the mortgage; that her acknowledgment was taken in no manner whatever; and that she never had any intention of incumbering or conveying her homestead. On her part, not the first element existed as the foundation of a valid contract, unless the physical act of affixing her name to the instrument be considered such. It is true her signature does not appear to have been obtained through any fraudulent representations on the part of any one, yet she is, in fact, defrauded of her property by sustaining the mort-

gage, and that species of property which the law most jealously guards. And in regard to the disturbance of titles likely to result from holding such a conveyance void, (which was strenuously urged as a reason for sustaining the mortgage,) we are unwilling to believe that many of the like false certificates have found place upon the records of the State. But if such be the case, it is an urgent reason why the Legislature should interfere, by imposing penalties of such severity and certainty as to prevent so flagrant an abuse. And as remarked by the Judge who tried the cause, " whatever hardships may exist in this cause, and it is undeniable that one party must suffer, is mainly attributable to the failure of the notary to perform his duty in the manner prescribed by law. And while I do not think that either the notary or the husband of the Defendant acted dishonestly in the matter, or artfully intended to deceive or defraud either the Plaintiff or Defendant, it cannot but be regretted that so grave a business transaction was so carelessly conducted, and so important an official act, was so unfaithfully performed."

The judgment below must be affirmed.